David L. Hartsell (*admitted pro hac*)
Sarah A. Zielinski (*admitted pro hac*)
**McGUIREWOODS LLP**
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
312-849-8100
dhartsell@mcguirewoods.com
szielinski@mcguirewoods.com

Cameron M. Hancock (Utah Bar No. 5389)
Rod N. Andreason (Utah Bar No. 8853)
**KIRTON McCONKIE**
Kirton McConkie Building
50 East South Temple, Suite 400
P.O. Box 45120
Salt Lake City, UT 84145-0120
(801) 328-3600
chancock@kmclaw.com
randreason@kmclaw.com

*Attorneys for Defendant Portfolio Recovery
Associates, LLC*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRETT FOWERS,<br><br>       Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>       Defendant. | Case No. 2:17-cv-01126 DN-EJF<br><br>**DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>Hon. David Nuffer<br>United States District Judge<br><br>Hon. Evelyn J. Furse<br>United States Magistrate Judge |

Defendant Portfolio Recovery Associates, LLC ("PRA"), by counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1, hereby submits this motion to dismiss Plaintiff Brett Fowers' Complaint with prejudice because it fails to state a cause of action upon which relief can be granted.

## INTRODUCTION

The Fair Debt Collection Practices Act ("FDCPA") and Utah Consumer Sales Practice Act ("UCSPA") expressly limit their application to *consumer* transactions.  Plaintiff's claims under those statutes fail as a matter of law because the debt at issue here arose from a *business* credit card account.  For this threshold reason, the Complaint should be dismissed.

In addition, it is well established that the FDCPA permits attempts to collect on time-barred debt, as long as the debt collector does not threaten litigation or other judicial process. After all, the law in Utah, as well as virtually every other jurisdiction, is that the expiration of the statute of limitations merely extinguishes the remedy, not the right. *Walker v. Stowell (In re Estate of Ostler)*, 2009 UT 82, ¶ 17, 227 P.3d 242 ("A statute of limitations … does not bar the right of action but only the remedy").  Here, PRA's letter was clear as day that PRA could not and would not pursue litigation to enforce the debt: "The law limits how long you can be sued on a debt. Because of the age of your debt, ***we will not sue*** you for it."  (emphasis added).  Even so, Plaintiff now claims that PRA's letter should have contained a further warning that making a payment might revive the statute of limitations.  But PRA's letter was not false or misleading: PRA's unqualified statement that it would not sue Plaintiff means just that—in the future, for any reason, and even if the statute of limitations were revived.

2

Numerous courts have held that the exact language found in PRA's letter complies with the FDCPA and cannot form the basis for a cognizable claim.  The language also precisely follows the guidance set forth by the agencies responsible for interpreting and implementing the FDCPA—the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB").  Indeed, in 2015, PRA entered into its own consent order with the CFPB on this very issue, which *required* PRA to use the exact language it did.  Not only does the consent order demonstrate that the letter was not false or misleading, but PRA's strict compliance with the consent order entitles it to the safe harbor defense under 15 U.S.C. § 1692k(e).  Thus, even if this Court were to determine that the disclosure is potentially misleading, the safe harbor provision would prohibit liability in this case.

Plaintiff's claim based on the Utah statute regulating collection agencies also fails.  That statute prohibits creditors from placing a time-barred account with a third-party collection agency (*i.e.*, where the creditor retains the ownership rights of the account), and further prohibits the collection agency from bringing a lawsuit on the time-barred debt.  That is not what happened here.  Here, the original creditor *sold* the account to PRA, and PRA sought collection on the debt *outside* of the judicial process.  Accordingly, the statute has no application in this case, does not render the sale of the account to PRA void, and cannot form the basis for a violation under the FDCPA or the UCSPA.

For these reasons, the complaint fails to state a claim for relief and the Court should dismiss the action with prejudice.

3

## BACKGROUND

Plaintiff Brett Fowers ("Fowers" or "Plaintiff") opened a business credit card with American Express for his company Peak Performance Chiropractic and ran up over $4,500 in charges and fees.  (Compl., ECF No. 2-2, ¶¶ 7-8; *see also* April 18, 2017 Letter, attached as Exhibit 1; Credit Card Statement, attached as Exhibit 2.)  After Plaintiff failed to pay, American Express sold the account to PRA.  (*Id.* at ¶ 10.)  On or about April 18, 2017, PRA sent Fowers a letter providing options to resolve the outstanding debt.  (*Id.* at ¶ 13.)[1]

Specifically, the letter provided Fowers with three payment options and immediately below the options provided a disclosure stating:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report.  Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau.

Ex. 1.  Following receipt of this letter, Plaintiff filed a complaint alleging violations of the FDCPA and the UCSPA, purporting to bring the claims on behalf of a class of Utah residents.  (*See generally* Compl.)

Both of Plaintiff's claims rest on two theories: (1) that "dunning consumers on time-barred debts without disclosure of that fact" and "failing to disclose that a voluntary payment

---

[1] The Complaint refers to the letter and states that it is attached to the Complaint as Exhibit A. (Compl. ¶ 13).  However, the copies of the complaint served on PRA and docketed in the state court did not contain any exhibits.  It appears that Exhibit A to the Complaint was subsequently filed in state court.  Because the letter forms the basis for Plaintiff's claims, was referred to in the Complaint and appears to have been intended to be attached, the Court may consider the letter on a motion to dismiss without converting it to a motion for summary judgment. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

may revive or toll the statute of limitations" violate the FDCPA and UCSPA (Compl. ¶¶ 34, 40); and (2) the Utah statute regulating collection agencies prohibited the sale of the account from Capital One to PRA, and thus, PRA had no right to collect on the account (*id.* at ¶¶ 35, 40).

As set forth below, both of these theories fail as a matter of law.  Accordingly, the Complaint should be dismissed in its entirety.

## LEGAL STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-movant. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  To survive a motion to dismiss, a plaintiff's complaint must allege enough facts, taken as true, to make his claim for relief "plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original); *see also Southern Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (holding the court "need not accept conclusory allegations without supporting factual averments").

In evaluating a Rule 12(b)(6) motion, a court has discretion to review certain documents without converting the motion to one for summary judgment. A court may take "judicial notice

of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006); *see also Hodgson v. Farmington City*, 675 F. App'x 838, 840 (10th Cir. 2017) (court can take judicial notice of administrative proceedings); *Pueblo of Sandia v. United States*, 50 F.3d 856, 861 n. 6 (10th Cir. 1995) (judicial notice of government reports).  In addition, on a Rule 12(b)(6) motion, a court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted).

## ARGUMENT

**A.**     **Plaintiff Cannot State a Claim for Relief Because the Debt Is a Business Debt**

The FDCPA expressly limits its scope to the collection of obligations incurred in consumer—not business—transactions.  15 U.S.C.A. § 1692a(5) (limiting the scope of the FDCPA to "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.");[2] *Bass v. Stopler, Koritzinsky, Brewster & Neider, S. C.,* 111 F.3d 1322, 1324 (7th Cir. 1997) ("Because not all obligations to pay are considered

---

[2] The UCSPA also applies only to consumer transactions and mirrors the language of the FDCPA.  Utah Code Ann. § 13-11-3(2)(a) (" 'Consumer transaction' means a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for…(i) primarily personal, family, or household purposes….").  Therefore, Plaintiff cannot state a claim under either the FDCPA or the UCSPA for a business debt.

'debts' under the Act, the definition of 'debt' thus serves to limit the scope of the FDCPA.").
Indeed, the Senate Report on the FDCPA states the scope of the act "applies only to debts
contracted by consumers for personal, family, or household purposes; it has no application to the
collection of commercial accounts." Consumer Credit Protect Act, S.Rep. No. 95-382 (1977),
1977 U.S.C.C.A.N. 1695, 1697.  Thus, "[t]he Act, by its plain language, distinguishes between
consumer debts—debts that are primarily for personal, family, or household purposes—and
commercial or business debts."  *Brown v. Federated Capital Corp.*, No. 2:14-CV-9 TS, 2014
WL 458139, at *2 (D. Utah Feb. 4, 2014) (holding the plaintiff could not establish an FDCPA
claim for collection efforts on a business credit card); *see also Pettingill v. Northern Leasing
Sys., Inc.*, No. 1:13-cv-60, 2013 WL 4084754, at * 2 (D. Utah Aug. 13, 2013) (finding that the
plaintiff failed to state a claim under the FDCPA where the underlying debt was a business debt
guaranteed by the individual plaintiff).

Courts uniformly hold that the FDCPA does not apply to business debts.  *See, e.g.,
Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff,* 638 F. App'x 100, 101–03 (2d
Cir. 2016) (holding that telephone services debt "ar[ose] out of a commercial transaction and
[was] not covered by the FDCPA"); *Hall v. Phenix Investigations, Inc.*, 642 F. App'x 402, 405
(5th Cir. 2016) (affirming dismissal of FDCPA claim based on commercial transaction);
*Goldman v. Cohen,* 445 F.3d 152, 154 n. 1 (2d Cir. 2006) ("[A]ctions arising out of commercial
debts are not covered by the protective provisions of the FDCPA."); *Pollice v. National Tax
Funding, L.P.*, 225 F.3d 379, 400 n. 23 (3d Cir. 2000) (explaining that water and sewer
obligations owed by individuals who own their property for business purposes do not qualify as

debts under the FDCPA because "the services are not 'primarily for personal, family, or household purposes.'"); *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (affirming dismissal of FDCPA claim where the transaction "was commercial, not for personal or household purposes."); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068–69 (9th Cir. 1992) (affirming summary judgment in favor of defendant on FDCPA claim where the money was used to invest in a software company); *Graham v. Tasa Grp., Inc.*, No. 2:13-00748, 2015 WL 875228, at *13 (N.D. Ala. Mar. 2, 2015) (dismissing FDCPA claims arising out of a loan for pest control business); *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 672–73 (D. Minn. 2011) (entering judgment in favor of defendant on FDCPA claim where the debt was for purchase of rental property); *Garza v. Bancorp Group, Inc.,* 955 F.Supp. 68 (S.D. Tex. 1996) (FDCPA did not apply to collection of debts arising out of leases of equipment for family-owned grocery stores because the debt is a commercial debt); *Van Eck v. BAL Global Fin., LLC,* No. 08–cv–13436, 2009 WL 3210992, at *1 (E.D. Mich. Sept. 30, 2009) (recognizing that debt from the purchase of materials for manufacturing industrial equipment is not consumer debt).

Here, Plaintiff opened a "Blue for Business" credit card account with American Express for his company Peak Performance Chiropractic.  (Ex. 2; *see also* Utah Secretary of State Business Entity Search, available at https://secure.utah.gov/bes/details.html?entity=5959334-0151#, attached hereto as Exhibit 3.)[3]  The collection letter at issue relates to this American

---

[3] Plaintiff is identified as the registered agent for Peak Performance Chiropractic in the Utah Secretary of State records. (*See* Ex. 3.)  In addition, the address on the credit card statement matches the corporate address listed in the state records.  (*Compare* Ex. 2 *with* Ex. 3.)

Express business account.  (Ex. 1 (identifying account ending in 1002 with a balance of $4,503.06); Ex. 2 (same)).  Thus, the debt is associated with a business account, not a consumer account, and it is not covered by the FDCPA.

Multiple courts have held that business credit cards, like the account at issue here, fall outside the FDCPA.  *See, e.g., Brown*, 2014 WL 458139, at *2 (holding the plaintiff could not establish an FDCPA claim for collection efforts on a business credit card); *see also Lyon v. Am. Recovery Serv., Inc.*, No. 1:14CV2541, 2016 WL 4680130, at *3 (N.D. Ohio Sept. 6, 2016) (dismissing FDCPA claim based upon attempts to collect American Express business card accounts); *Vasilakos v. Blitt & Gaines, P.C.*, No. 12-5526, 2013 WL 4047634, at *3-4 (N.D. Ill. Aug. 8, 2013) (dismissing FDCPA claim based on Capital One business credit card); *Ross v. Panteris & Panteris, LLP*, No. 12-6096, 2013 WL 5739145, at *11 (D.N.J. Oct. 22, 2013) (holding that debt collection of American Express business card fell outside the scope of the FDCPA);  *Schram v. Federated Fin. Corp.,* No. 06–12700, 2007 WL 1238863, at *1 (E.D. Mich. Apr. 27, 2007) (holding that the FDCPA did not apply because the business credit card debt was a business debt).

Plaintiff's conclusory recitation of the statutory definition, that "Defendant sought to collect an alleged debt incurred primarily for a personal, family, or household purpose," is insufficient to state a claim.  (Compl. ¶ 14.)  Such legal conclusions without any supporting facts must be discarded in assessing whether the plaintiff has sufficiently stated a claim for relief. *Twombly*, 550 U.S. at 555, 557; *see also Hall*, 642 F. App'x at 406 ("the commercial nature of the debt rebuts any conclusory allegation that there was a consumer debt subject to the

FDCPA."); *Scarola*, 638 F. App'x at 102-03 (2d Cir. 2016) (ignoring the plaintiffs' conclusory statements that the transaction was primarily for personal, family or household purposes). Because plaintiff has failed to adequately allege facts to support an inference that the debt at issue is a consumer debt, his claims must be dismissed. *Askew v. Crown Mgmt., LLC*, No. 16-00129, 2017 WL 1534396, at *4 (N.D. Miss. Apr. 27, 2017) (dismissing FDCPA claims where the "complaint merely contains a 'threadbare recital of a cause of action that cannot survive the motion to dismiss'" instead of any factual support that the debt was a consumer debt).

Moreover, Plaintiff cannot attempt to salvage his claims by asserting that he used the business account primarily for personal purposes. The "relevant time" for analyzing whether the debt is primarily for personal, family or household "is when the loan is made, not when collection is attempted." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000). In *Miller*, the Seventh Circuit explained that "[t]he original creditor is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what *current use* the debtor is making of the loan." *Id.* at 875 (emphasis added); *see also Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012) (adopting the Seventh Circuit's approach in *Miller*). In addition, the purpose of the FDCPA favors focusing on the original purpose of the debt:

> The Act regulates the debt collection tactics employed against *personal* borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods. Businessmen don't need the warnings. A businessman who converts a business purchase to personal use does not by virtue of that conversion lose his commercial sophistication and so acquire a need for statutory protection.

10

*Miller*, 214 F.3d at 875 (internal citations omitted) (citing S. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), U.S. Code Cong. & Admin. News 1977, 1695; *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); and *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

The analysis in *Vasilakos* is directly on point. In that case, the plaintiff had opened a business credit card from Capital One, and the account was sent to the defendant law firm for collection. *Vasilakos*, 2013 WL 4047634, at *1. The plaintiff filed a lawsuit under the FDCPA and alleged that individual purchases on the card were "personal transactions, not business transactions." *Id.* at *2, 3. The court rejected this approach to the statutory definition, explaining that the "relevant transaction was the one in which [plaintiff] obtained the Capital One credit card and became obligated to pay amounts due by way of purchases made with the card." *Id.* at *3. Because the plaintiff applied for and obtained a business card, the transaction for which "he became obligated to pay was a business transaction, not a personal or household transaction." *Id.* This aligns with the Seventh Circuit's reasoning that the original creditor is more likely to know the character of the debt at the time of the original obligation than either the creditor or the debt collector at the time of collection. *Miller*, 214 F.3d at 875 (explaining that if the plaintiff bought a property for use as an office, entering into a commercial loan, and later converted it to personal use, the debt collector would not have to comply with the FDCPA); *see also Fleet Nat. Bank v. Baker*, 263 F. Supp. 2d 150, 153–54 (D. Mass. 2003) ("Whether a debt constitutes 'consumer debt' of the sort covered by the FDCPA, depends on the character of the lending transaction with particular attention to the purpose for which the credit was extended.").

Simply put, application of the FDCPA cannot hinge upon the plaintiff's unspoken and contrary use of a business credit card for personal purposes. *Powers v. Kearns, Brinen & Monaghan, Inc.*, No. 15-187, 2015 WL 8678378, at *3 (W.D.N.Y. Dec. 11, 2015) ("Even assuming, for purposes of the motion, the truth of plaintiff's assertion regarding her use of the funds, plaintiff's unstated intentions do not transform this commercial transaction, the sale of future receivables, into a consumer loan."); *Floyd v. Bank of Am., N.A.*, No. 1:13-CV-2072, 2014 WL 3732591, at *5 (N.D. Ohio July 25, 2014) ("Even if plaintiff resides on the rental property sometime after acquisition, plaintiff's personal use of the property does not alter the commercial character of the transaction creating the debt obligation.").  Indeed, creditors and debt collectors would not know when the statute would apply under such circumstances.  "What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Beauvoir v. Israel,* 794 F.3d 244, 248 (2d Cir. 2015) (internal quotation marks omitted).  "[A] plaintiff may not impose the burdens of the FDCPA on an obligation outside the scope of the statute." *Id.*

Because the debt derives from a business account, plaintiff's claims under the FDCPA and UCSPA fail as a matter of law.  Accordingly, the complaint should be dismissed.

## B.     The Letter Is Not False or Misleading

Plaintiff's FDCPA claim also fails because PRA's letter was not false or misleading.  The FDCPA prohibits the use of "any false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e(2)(a). Whether a communication is false, deceptive or misleading is governed by an objective standard, "measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector."

*Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997) (unpublished table case) (quotations omitted); *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1241 (D. Utah 2016).  Whether the language in a collection letter is confusing or misleading to the least sophisticated consumer is a question of law.  *Boedicker v. Midland Credit Mgmt., Inc.*, 227 F. Supp. 3d 1235, 1238 (D. Kan. 2016).

It is well-settled that "a debt collector is permitted to collect on a debt after the statute of limitations has expired, provided that those efforts do not include the threat or actual filing of a lawsuit." *Reed v. AFNI, Inc.*, No. 2:09-CV-459, 2011 WL 112430, at *2 & n.14 (D. Utah Jan. 13, 2011); *see also Buchanan* v. *Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) ("Legal defenses are not moral defenses…[A] creditor remains free…to let the debtor know what the debt is and to ask her to pay it…For some individuals, such letters may offer a welcome solution to an outstanding debt."); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011) (explaining that because "the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts."); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) ("in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid"). Indeed, the Supreme Court recently reaffirmed that, in a bankruptcy context, filing a proof of claim on a time-barred debt does not violate the FDCPA. *Midland Funding, LLC* v. *Johnson*, 581 U.S. ___, 137 S.Ct. 1407, 1415 (2017).

As such, Plaintiff's claim cannot rest on the mere existence of the letter seeking to collect a time-barred debt; instead, he must sufficiently allege that the letter would mislead the least sophisticated consumer.  Critically, the plain language of the letter explicitly informs the consumer of the statute of limitations and states that PRA will not sue on the debt.  Indeed, the unqualified statement "we will not sue you" conveys in simple terms that Plaintiff will never face a lawsuit regarding this debt, period.  Thus, that language cannot be false or misleading, and a cause of action cannot accrue, *unless* PRA contradicted its statement and actually sued on the debt.  Here, that did not occur.

Indeed, an FDCPA claim based on collecting a debt outside the statute of limitations has been rejected within this district where the collection letter contained the same language at issue here.  *Muscato v. Northland Grp., Inc.*, No. 13-00042, 2015 WL 12600165, at *2, 6 (D. Utah Jan. 30, 2015) (J. Waddoups) (granting summary judgment on FDCPA claim where the letter stated "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency.").

The overwhelming majority of decisions hold that collection letters containing identical disclosures do not violate the FDCPA.  *See, e.g., Baye v. Midland Credit Mgmt., Inc*., No. 17-4789, 2017 WL 3425438, at *4-*5 (E.D. La. Aug. 9, 2017) (dismissing claims where the collection letter stated "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."); *Judah v. Total Card, Inc.*, No. 16-5881, 2017

14

WL 2345636, at *5 (D.N.J. May 30, 2017) (holding that because the letter "specifically states

that due to the age of the debt, Pinnacle will not sue Plaintiff for the debt" it did not violate the

FDCPA); *Valle v. First Nat'l Collection Bureau, Inc.*, 252 F. Supp. 3d 1332, 2017 WL 2126830,

at *6 (S.D. Fla. 2017) ("Read in the context of the entire paragraph, the phrase 'will not sue you'

is not false or deceptive, even from the perspective of the least sophisticated consumer.");

*Boedicker v. Midland Credit Mgmt., Inc.*, 227 F. Supp. 3d 1235, 1239 (D. Kan. 2016) (holding

that the disclosure "The law limits how long you can be sued on a debt," and

"we will not sue you" did not violate the FDCPA); *Genova v. Total Card, Inc.*, 193 F. Supp. 3d

360, 366–67 (D.N.J. 2016) (holding that even the least sophisticated consumer could not be

misled by "the Letter expressly stat[ing] that the law limits how long you can be sued on a debt

and informed Plaintiff that, because of the age of your debt, Merrick Bank Corporation will *not*

sue you for it.") (internal quotations and alterations omitted); *Miran v. Convergent Outsourcing*

*Inc.*, No. 16-0692, 2016 WL 7210382, at *5 (S.D. Cal. Dec. 13, 2016) (granting judgment on the

pleadings in favor of defendant where the disclosure stated "Because of the age of your debt, we

will not sue you for it, and we will not report it to any credit reporting agency"); *Tatis v. Allied*

*Interstate, LLC*, No. 16-00109, 2016 WL 5660431, at *7, *9 (D.N.J. Sept. 29, 2016) (holding

that the "we will not sue you" language avoids any potential liability under the FDCPA); *Olsen*

*v. Cavalry Portfolio Servs., LLC*, No. 15- 2520, 2016 WL 4248009, at *2 (M.D. Fla. Aug. 11,

2016) (holding that because the collection letters "specifically state that Calvary 'will not sue'

and contain no false or deceptive representation about partial payment" the plaintiff failed to

state a claim); *Cohen v. Dynamic Recovery Sols.*, No. 16-576, 2016 WL 4035433, at *3 (D.N.J.

July 26, 2016) ("given Defendant's explicit disclaimer of any threat of litigation, and the acknowledgment that the law limits how long one can be sued on a debt, even the least sophisticated debtor could not have read Defendant's letter as misrepresenting the legal status of the debt.").

In fact, the precise PRA letter at issue in this case has been held not to violate the FDCPA. *See Burgess v. Portfolio Recovery Assocs., LLC*, No. 16-1463, 2017 WL 2471802, at *4 (C.D. Cal. Mar. 23, 2017) (holding that identical letter did not violate the FDCPA because "[t]he Letter explicitly contained language regarding [PRA's] inability to sue on the debt. This language informs the least sophisticated debtor that LLC is not able to take legal action to collect this debt."); *Filgueiras v. Portfolio Recovery Assocs.*, No. 15–8144, 2016 WL 1626958, *11 (D.N.J. Apr. 25, 2016) (holding identical letter from PRA did not violate the FDCPA); *but see Bereket v. Portfolio Recovery Assocs., LLC*, No. 17-0812, 2017 U.S. Dist. LEXIS 164763 (W.D. Wash. Oct. 4, 2017) (denying motion to dismiss FDCPA claim).[4]

In contrast, the cases on which Plaintiff's theory rests are distinguishable because the letters at issue in those cases did not contain *any disclosure* relating to the time-barred nature of the debt, let alone the express disclosure present in the letter at issue here. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1015 (7th Cir. 2014) (no disclosure in the two letters at issue); *see also Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 513 (5th Cir. 2016) ("a collection letter seeking payment on a time-barred debt (*without disclosing* its unenforceability)

_____

[4] The *Bereket* decision reached its contrary result by relying on a line of readily distinguishable cases and an outdated FTC report, which are discussed in the following paragraphs.

but offering a "settlement" and inviting partial payment (*without disclosing* the possible pitfalls) could constitute a violation of the FDCPA.") (emphasis added); *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015) (no disclosure in the letter).

None of those cases held that PRA's disclosure or any disclosure using similar language violated the FDCPA.  In fact, two of the decisions suggest just the opposite: that the language used by PRA would satisfy the FDCPA.  Specifically, both *McMahon* and *Buchanan* expressly refer to the disclosure in the consent order issued by the FTC in *United States v. Asset Acceptance, LLC,* No. 8:12–cv–182 (M.D. Fla. 2012), as complying with the FDCPA—and the language from that consent order is identical to the language used by PRA.  *See McMahon*, 744 F.3d at 1015–16 (explaining that the "decree requires the company to disclose to consumers whether it knows or believes that a debt was incurred outside the limitations period, using this language: 'The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it.'"); *Buchanan*, 776 F.3d at 400 (finding that using the statement "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency" would "*correct[] any possible misimpression* by unsophisticated consumers without venturing into the realm of legal advice.") (emphasis added).

Similarly, in *Pantoja*, although some disclosure was made, the court relied heavily on its determination that a critical piece of the Asset consent order was missing.  *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686 (7th Cir. 2017).  Specifically, the court held that because the letter "omitted the first sentence from the consent decree about the law limiting how

long you can be sued for a debt" it left the consumer to wonder whether the debt collector *chose* not to sue on a legally enforceable debt as opposed to the debt not being legally enforceable because of the limitations period.  *Id.*; *see also Miran v. Convergent Outsourcing, Inc.*, No. 16-00692, 2017 WL 1410296, at *6 & n.4 (S.D. Cal. Apr. 20, 2017) (distinguishing *Pantoja* because the letter in that case left out the language regarding "the law limiting how long you can be sued for a debt").

Here, the language used by PRA in its disclosure to Fowers is *identical* to the language set forth in the Asset consent order and subsequent consent orders entered into by the CFPB, including PRA's own 2015 consent order with the CFPB.  *See In re Portfolio Recovery Assocs., LLC*, CFPB Administrative Proceeding No. 2015-CFBP-0023, Doc. 1, at 38-39 (Sept. 9, 2015) ("PRA consent order"), available at http://files.consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associates-llc.pdf; Asset consent order, available at https://www.ftc.gov/sites/default/files/documents/cases/2012/01/120131assetconsent.pdf; *In re Encore Capital Group, et al*., CFPB Administrative Proceeding No. 2015-CFPB-0022, Doc. 1, at 38-39 (Sept. 9, 2015) ("Encore consent order"), available at http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf.  These agency-approved communications *exactly* match what was contained in the letter sent by PRA: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

Courts uniformly hold that where the letter follows the agency-approved language, the letter will not mislead the least sophisticated consumer and it complies with the FDCPA as a matter of law.  *Valle*, 252 F. Supp. 3d 1332 ("the Court does find that the fact that the two

agencies charged with enforcing the FDCPA mandated the language used by the Defendant serves to reinforce its finding that the language does not constitute a false representation or a deceptive means of collecting the debt."); *Baye*, 2017 WL 3425438, at *4 (dismissing claims because "the defendants' language in its collection letters exactly matches this FTC-approved language."); *Judah*, 2017 WL 2345636, at *5 ("Because this language has been endorsed by the CFPB and the FTC, the Court determines that the Collection Letter is not deceptive."); *Genova*, 193 F. Supp. 3d at 367–68 (dismissing claims where the disclosure contained "nearly identical language that both the Consumer Financial Protection Bureau ('CFPB') and Federal Trade Commission  ('FTC'), two agencies tasked with enforcing the FDCPA, have required collectors of time-barred debts to adopt in publicly filed consent decrees"); *Boedicker*, 227 F. Supp. 3d at 1241 (citing the FTC and CFPB consent decrees in holding that the disclosure complies with the FDCPA); *Olsen*, 2016 WL 4248009, at *2 (holding that because the collection letter "adopts language recently approved by the Consumer Financial Protection Bureau" the plaintiff failed to state a claim).

Perhaps more critically, the foundation for the *McMahon* line of cases, at least with respect to the revival disclosure, has been called into question by subsequent CFPB direction. Those courts relied upon a 2013 FTC report, which at the time recommended that "if a collector knows or should know that it is collecting on a time-barred debt, it must inform the consumer that (1) the collector cannot sue to collect the debt, and (2) providing partial payment would revive the collector's ability to sue to collect the remaining balance."  *McMahon*, 744 F.3d at 1015 (citing Fed. Trade Comm'n, The Structure and Practice of the Debt Buying Industry 47

(2013)); *see also Pantoja*, 852 F.3d at 684 (resting on "the danger" recognized in *McMahon*);

*Daugherty*, 836 F.3d at (resting on *McMahon*); *Buchanan*, 776 F.3d at 396 (citing *McMahon*).

After studying the issue further, however, the CFPB has held that a disclosure relating to the

potential revival of the collection claim would only lead to more confusion and has endorsed the

exact language used by PRA here.

Specifically, in the CFPB's most recent discussion on the matter, the CFPB has advised

that debt collectors should *not* make any warning or disclosure regarding the potential revival of

the statute of limitations due to the potential for debtor confusion.  The CFPB found that the debt

collector should "inform[ ] the consumer that, because of the age of the debt, the debt collector

cannot sue to recover it," but "the agency expressly declined to require any additional warning

that partial payment might revive a time-barred debt."  *Boedicker*, 227 F. Supp. 3d at 1240–41

(citing CFPB Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking,

Outline of Proposals Under Consideration and Alternatives Considered, July 28, 2016 ("CFPB

2016 Report"), at 19).  The CFPB reasoned:

> Consumers may revive a time-barred debt under state law if they make a payment
> on it or acknowledge that the debt is theirs. Consumers may believe that these
> actions would be beneficial to them. To try to correct this impression, collectors
> could attempt to disclose that these actions in fact could permit collectors to
> subsequently file a lawsuit because the debt has been revived. *However, the
> Bureau's testing to date suggests that consumers may not fully understand such a
> disclosure, because it seems counterintuitive to them.*

CFPB 2016 Report at 21, available at http://files.consumerfinance.gov/f/documents/20160727_

cfpb_Outline_of_proposals.pdf (emphasis added).  Instead, the proposal suggested that the CFPB

issue a regulation in which debt collectors waive the right to sue on any debt that is "revived"

under state law through partial payment.  *Id.*

That is precisely what the language used by PRA achieves here.  By stating that PRA "will not sue" on the debt, PRA is expressly waiving any theoretical right to sue if the claim becomes revived under state law.  *Miran*, 2016 WL 7210382, at *5 (holding the statement "we will not sue you for [the debt]" constituted a waiver of the debt collector's right to sue).

The letter in this case expressly disclosed the time-barred nature of the debt and affirmatively waived any right to sue—eliminating the concern of revival.  The disclosures mirrored the guidance of the CFPB to ensure it was not misleading.  As such, the letter did not violate the FDCPA or the UCSPA as a matter of law and the claims must be dismissed.

**C.     Because the Disclosure Was Pursuant to a Consent Order with the CFPB, It Falls under the FDCPA's Safe Harbor Provision**

On September 8, 2015, the CFPB entered into a consent order with PRA that expressly addressed the collection of time-barred debts.  *See* PRA Consent Order, available at http://files. consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associates-llc.pdf.  The CFPB found that prior to March 1, 2012, PRA sent letters that failed to disclose that the debt was "too old for litigation."  *Id.* at ¶ 59; *see also* ¶¶ 75-78.  To address this concern, the CFPB directed PRA to include the following statement in any attempt to collect a debt that is time-barred and that cannot be reported to a credit reporting agency:  "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report.  Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau."  *Id.* at ¶ 126(a).  This is the identical language used by PRA in the April 25, 2017 letter to Plaintiff.

The FDCPA expressly affords protection from any liability where the conduct is "in good faith conformity with any advisory opinion of the FTC." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 588 (2010) (citing 15 U.SC. § 1692k(e)); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 363 (3d Cir. 2015) (explaining that Section 1692k(e) provides "a safe harbor for a debt collector that seeks and receives legal opinions from the Consumer Financial Protection Bureau before they proceed."). Specifically, the safe harbor provides:

> No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1692k(e).

In analyzing the safe harbor, the Supreme Court highlighted "the role Congress evidently contemplated for the FTC in resolving ambiguities in the Act." *Jerman*, 559 U.S. at 588. Here, the FTC and CFPB—the two agencies responsible in enforcing the FDCPA—have clearly spoken on the agencies' interpretation of the requirements of a letter seeking to collect on a time-barred debt. The agencies have issued reports, findings and consent orders addressing this very issue—the disclosures relating to collecting time-barred debt. *See* PRA Consent Order; Asset Consent Order; 2016 CFPB Report; Encore Consent Order. The agencies have drafted the language that will adequately protect consumers. The CFPB evaluated this issue specifically with respect to PRA and mandated that it use the language contained in the letter sent to Plaintiff.

Because PRA's disclosure complied with the express interpretation and requirements of the CFPB, Section 1692k(e) precludes liability in this case.  Accordingly, Plaintiff's FDCPA claim must be dismissed.

**D.      Utah's Collection Agency Statute Has No Application to Purchased Accounts**

Plaintiff next contends that the Utah statute that regulates collection agencies invalidates the sale of the account from Capital One to PRA, purportedly eliminating PRA's right to collect on the account.  (Compl. ¶¶ 23-25.)  Plaintiff relies upon Utah Code § 12-1-8, entitled "Designating and limiting activities as to assignments," which states:

> Any collector having complied with the provisions of this chapter, may receive accounts, bills or indebtedness, take assignments for the purpose of collections, and at the direction of the assignor bring suit as assignee, provided however, that all accounts shall be within the statute of limitations as provided by law. All legal processes, pleadings, and court representations shall be prepared and conducted by a duly licensed attorney, and a copy of summons and complaint, in all cases, shall be served on defendants.

Utah Code Ann. § 12-1-8.  The plain language of this Section limits its application to third-party collection agencies with whom an account is placed from *bringing suit* on an account that is outside the statute of limitations—not prohibiting the *purchase* of an account.

Broken out into its parts, Section 12-1-8 permits collection agencies to do three separate things:

- receive accounts, bills or other indebtedness;

- take assignments for the purpose of collections; and

- at the direction of the assignor, bring suit as assignee, provided however, that all accounts shall be within the statute of limitations as provided by law.

It is clear that the "assignment" referenced in this section applies to the placement of an account with the collection agency at the direction of the owner of the debt.  *See also* Utah Code Ann. § 12-1-11(2)(e) (using "assignment of the debt" to indicate placement of the account with a third party debt collection agency).  In addition, the statement "provided however, that all accounts shall be within the statute of limitations" modifies the collection agency's ability to bring suit.  *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (explaining that under the "rule of the last antecedent, ... a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows").  Accordingly, the purpose of the section is to permit a third-party collection agency to bring a lawsuit on an account "*at the direction of the assignor*" (the creditor or owner of the debt), but prohibit the collection agency from filing any such lawsuit outside of the statute of limitations.  Thus, the plain language of the statute has no application to PRA's purchase of the account from Capital One.  PRA had (and has) the right to collect on the debt.[5]

Because Plaintiff's claim rests on a faulty interpretation of Section 12-1-8, it fails as a matter of law.  Accordingly, the claims must be dismissed.

---

[5] Indeed, any such attempt to expand the statute to prohibit the sale of accounts would face constitutional concerns.  *See* U.S. Constitution, Article I, Section 10, Clause 1 ("No State shall…pass any…Law impairing the Obligation of Contracts….").

**CONCLUSION**

For the foregoing reasons, Defendant Portfolio Recovery Associates, LLC respectfully

requests that the Court grant its motion to dismiss in its entirety and enter an order dismissing the

Complaint with prejudice.

Dated:  November 9, 2017                    Respectfully submitted,

                                            PORTFOLIO RECOVERY ASSOCIATES, LLC,
                                            Defendant

                                            By: /s/ David L. Hartsell
                                                 One of Its Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November, 2017, a true and correct coy of

the foregoing **DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN**

**SUPPORT** was served by the method(s) indicated below upon the following:


Tyler B. Ayres                              (  )   U.S. Mail, Postage Prepaid
Daniel M. Baczynski                    (  )   Hand Delivered
AYRES LAW FIRM                      (  )   Overnight Mail
12339 S. 800 E. Ste. 101               (  )   Facsimile
Draper, UT 84020                         (X)   E-mail/E-filing
tyler@ayreslawfirm.com
Daniel.ayreslaw@gmail.com


*s/ David L. Hartsell*